UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

In re:

| | |
|---|---|
| | Chapter 11 |
| EVANS OIL COMPANY LLC | Case No. 9-11-bk-1515-BSS |
| KCWL, LLC | Case No. 9-11-bk-1519-BSS |
| LONG EQUIPMENT FINANCE, LLC | Case No. 9-11-bk-1520-BSS |
| LONG PETROLEUM PRODUCTS, LLC | Case No. 9-11-bk-1521-BSS |
| LONG RUN, LLC | Case No. 9-11-bk-1522-BSS |
| OCTANE, LLC | Case No. 9-11-bk-1523-BSS |
| RML, LLC | Case No. 9-11-bk-1524-BSS |
| Debtors | **(Jointly Administered Under** |
| _____/ | **Case No. 9-11-bk-1515-BSS)** |

**TENTH INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
AND RELATED RELIEF PURSUANT TO BANKRUPTCY CODE SECTION 363
AND GRANTING ADEQUATE PROTECTION PURSUANT TO BANKRUPTCY
CODE SECTIONS 361 AND 363 AND INTERIM ORDER EXTENDING
AUTOMATIC STAY AS TO RANDY M. LONG**

THIS CASE came on for consideration of the *Emergency Motion of Debtors and Debtors-in-Possession for an Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* (the "Motion")[1] [Docket No. 11], filed on behalf of Evans Oil Company LLC ("Evans") KCWL, LLC ("KCWL"), Long Equipment Finance, LLC ("Long Equipment"), Long Petroleum Products LLC ("Long Petroleum"), Long Run, LLC ("Long Run"), Octane, LLC ("Octane"), and RML, LLC ("RML" and together with Evans, KCWL, Long Equipment, Long Petroleum, Long Run and Octane, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11

cases (the "Cases"), by and through their undersigned proposed counsel, for entry of an order (a) authorizing interim and permanent use of Cash Collateral and granting adequate protection, and (b) seeking an emergency hearing on the Motion to consider the entry of an interim order pursuant to Bankruptcy Rule 4001 (this "Order") authorizing Debtors, *inter alia*, to use the Cash Collateral, all upon the terms and conditions set forth herein pending the Final Hearing referred to below; and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Cash Collateral, the *Motion to Prohibit Use of Cash Collateral and Objection of Fifth Third Bank to Debtors' Motion to Use Cash Collateral* [Docket No. 47] and the objection of Fifth Third Bank filed May 25, 2011 [Docket no. 277] (together, the "Fifth Third Objection"), and the *Response to Motion for an Interim Order Authorizing Use of Cash Collateral* [Docket No. 50] (the "TransMontaigne Response" and together with the Motion and the Fifth Third Objection, the "Cash Collateral Pleadings").

On January 31, 2011, this Court entered that certain *Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 31] (the "First Interim Cash Collateral Order"). On February 3, 2011, this Court entered that certain *Second Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy*

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

2

4147143.1

*Code Section 361 and 363* [Docket No. 63] (the "Second Interim Cash Collateral Order"). On February 4, 2011, this Court entered that certain *Third Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 70] (the "Third Interim Cash Collateral Order"). On February 17, 2011, this Court entered that *Fourth Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 117] (the "Fourth Interim Cash Collateral Order"). On March 17, 2011, this Court entered that *Fifth Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 117] (the "Fifth Interim Cash Collateral Order"). On April 14, 2011, this Court entered that *Sixth Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 117] (the "Sixth Interim Cash Collateral Order"). On May 5, 2011, this Court entered that *Seventh Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 220] (the "Seventh Interim Cash Collateral Order"). On May 26, 2011, this Court entered that *Eighth Interim Order Authorizing Use of Cash Collateral Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Section 361 and 363* [Docket No. 280] (the "Eighth Interim Cash Collateral Order"). On July 7, 2011 this Court entered that *Ninth Interim Order Authorizing Use of Cash Collateral and Related*

*Relief Pursuant to Bankruptcy Code Section 363 and Granting Adequate Protection Pursuant to Bankruptcy Code Sections 361 and 363 and Interim Order Extending Automatic Stay as to Randy M. Long* [Docket No. 338] (the "Ninth Interim Cash Collateral Order") and together with the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and this Tenth Interim Cash Collateral Order, the "Interim Cash Collateral Orders").

Debtors have requested Fifth Third Bank ("Fifth Third") to agree to extend the Interim Cash Collateral Orders pursuant to the terms and upon the conditions set forth in this Tenth Interim Cash Collateral Order (the "Tenth Interim Cash Collateral Order"), and also requested the same of the Office of the United States Trustee.

Debtors have requested Fifth Third to agree to extend the automatic stay to Randy M. Long on the terms and conditions set forth in that certain order entered January 31, 2011 [Docket No. 34], and extended pursuant to the that certain order entered February 3, 2011 [Docket No. 62] (together, the "Stay Order") through September 30, 2011. Fifth Third and the United States Trustee each have agreed to such extensions pursuant to the terms of this Order. After due deliberation and hearing on August 11, 2011, this Court finds and concludes that: (i) the Court has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409; (iii) this matter is a core proceeding under 28 U.S.C. § 157(b)(2); (iv) the relief requested in the Motion is in the best interests of Debtors, their estates, creditors, and other parties in interest; (v) adequate and proper notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; (vi) the issues addressed in the Fifth Third Objection and the TransMontaigne

Response are resolved or have been overruled on the terms and subject to the conditions as set forth herein; (vii) good and sufficient cause exists for the granting of the relief requested in the Motion as set forth herein; and (viii) the Stay Order should be extended on the terms and conditions set forth herein. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED, THAT** that:

1. The Motion is GRANTED on an interim basis. Except as expressly set forth herein, the terms and conditions of the Interim Cash Collateral Orders shall continue in full force and effect for through and including September 30, 2011 (the "Extension Date"). The Parties reserve their respective rights with regard to Cash Collateral (as defined herein) including any rental income related to a certain boat slip owned by the Debtors and subject to the security interest of Fifth Third.

2. To the extent that Fifth Third Bank has a valid, perfected and enforceable security interests in Debtors' cash collateral ("Cash Collateral") as that term is defined under Bankruptcy Code Section 363(a), Debtors may use Cash Collateral for the period commencing on the Petition Date to pay those items delineated in the budget (the "Cash Collateral Budget") attached to this Order as Exhibit A through and including the week ending September 30, 2011 (with a variance from actual-to-projected disbursements weekly not to exceed 10%, on a cumulative basis collectively, the "Budget"), effective through the Extension Date on an interim basis. As such, and pursuant to the terms of the Fourth Interim Cash Collateral Order, Debtors shall pay a management fee of $20,000.00 to Randy M. Long for September 2011. All parties in interest reserve their rights with respect to the management fee after September 2011 and these payments shall have no precedential effect.

3. As adequate protection for any such interest in Cash Collateral used by Debtors, Fifth Third is granted replacement liens upon, and security interests in, Debtors' post-petition Cash Collateral, but only to the extent that Debtors diminish such Cash Collateral, and in no event to exceed the type, kind, priority and amount, if any, which existed on the Petition Date. Moreover, as further adequate protection of Fifth Third's interests in Cash Collateral, Debtors shall provide counsel for Fifth Third and any creditors' committee with such reports as described on the list attached hereto as Exhibit B.

4. In the event actual disbursements weekly exceed projected disbursements by more than 10%, on a cumulative basis, Fifth Third may, upon not less than two (2) business days' prior written notice to Debtors' counsel, have the right to a hearing on stay relief. In any event, it shall not be a default under this Interim Cash Collateral Order if actual disbursements for "Product purchases" (petroleum-based) are greater than have been budgeted by Debtors to the extent prices charged Debtors by its suppliers for such purchases increase after January 30, 2011.

5. On Wednesday, February 9, 2011, Debtors provided Fifth Third with a report (the "Petition Date Report"), reviewed by The Parkland Group, Inc. ("Parkland"), of Debtors' inventory, cash and receivables (together, the "Working Capital") as of the Petition Date. No later than 12:00 p.m. Noon prevailing Eastern Time, on each Wednesday after February 15, 2011, Debtors shall provide Fifth Third with a report (the "Interim Report"), reviewed by Parkland, of Working Capital on the most recent prior date for which Debtors have such information. In the event, and to the extent that, the Working Capital on the Interim Report is less than the Working Capital on the Petition

Date Report (the "Deficiency"), Fifth Third may, by written notice to Debtors' counsel sent via electronic mail and filed with the Court, declare a default under this Cash Collateral Order, in which event Debtors shall have two (2) business days to cure the Deficiency and Debtors and Fifth Third shall have the right to an emergency hearing to consider whether Fifth Third should be granted relief from the automatic stay provisions of 11 U.S.C. § 362. Debtors may cure the Deficiency by increasing Working Capital or by depositing funds in a separate debtor-in-possession account at BB&T in the amount of the Deficiency (the "Reserve") as and for further adequate protection. Debtors shall deposit all net loan proceeds from any post-petition financing in a separate loan proceeds debtor-in-possession account at BB&T (the "DIP Loan Account"). Funds may be advanced to the Reserve and to Debtors' general operating account from the DIP Loan Account. The Reserve may be drawn upon by Debtors and such funds returned to the DIP Loan Account upon Debtors subsequently presenting a report (the "Cure Report"), reviewed by The Parkland Group, that demonstrates (a) the Working Capital as of such date is greater than the Working Capital reported in the Petition Date Report (b) that the Debtor will not default under this cash collateral order in the next five (5) business days.

6. Notwithstanding anything to the contrary set forth in any Order or the Cash Collateral Budget, Debtors are authorized to use Cash Collateral to purchase fuel, refined petroleum products, lubricants and other product. This shall not affect the Cash Collateral Budget calculations for default purposes solely between Debtors and Fifth Third.

7. As a part of the Interim Adequate Protection Payments, and pursuant to the terms of the Fourth Interim Cash Collateral Order, Debtors shall pay Fifth Third the

4147143.1

sum of Forty Thousand Dollars ($40,000.00) on September 1, 2011. All parties in interest reserve their rights with respect to any additional adequate protection payments after September 2011 and these payments shall have no precedential effect. Fifth Third does not object to Debtors' retention of Barrier Advisors, Inc. ("Barrier") as Debtors have agreed that so long as Barrier receives a monthly fee of $20,000, Fifth Third shall receive monthly adequate protection payments no less than the amount of the Barrier monthly fee.

8. This Cash Collateral Order shall remain in full force and effect through and including the Extension Date and a further hearing to consider the Motion will be held at a date, to be scheduled by the Court.

9. The Court approves the extension of Stay Order, including without limitation, Fifth Third through and including the Extension Date. Debtor shall submit to the Court for approval a separate entry extending the Stay Order provided, however, this Cash Collateral Order shall have the full force and effect of the Stay Order. Any objections to (a) the further use of Cash Collateral or (b) the Stay Order must be filed with the Bankruptcy Court and served upon counsel for the Debtors as required by notice of the Court, with the exception of Fifth Third's Objection which is continued without the necessity of re-filing.

10. A copy of this Cash Collateral Order shall be served by Debtors or their counsel, by regular mail on (i) the Office of the United States Trustee for Region XXI; (ii) each of Debtors' secured lenders; (iii) counsel for Fifth Third Bank; (iv) the additional creditors identified on each Debtor's list of twenty (20) largest unsecured creditors; (v) other known claimants having liens or security interests in property of

8

Debtors; (vi) the Internal Revenue Service; and (vii) the United States Department of Justice, within five (5) days of entry of this Order.

11. If notice is given in the manner provided herein, said notice shall be sufficient and proper and in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

12. Nothing in the Motion or this Order shall be construed to impair Debtors' right, or the rights of any of Debtors' estates, to contest the validity, priority, perfection or amount of any claimed security interest of Fifth Third Bank.

13. This Order shall be immediately effective and enforceable upon entry.

**DONE** and **ORDERED** in Chambers at Ft. Myers, Florida, on  August 11, 2011  .

_____
Barry S. Schermer
United States Bankruptcy Judge

4147143.1

Copies to:

Debtors, Debtors' Attorney, United States Trustee
Alan J. Statman, Esq., Statman, Harris, & Eyrich LLC, 441 Vine Street, Ste. 3700, Cincinnati, OH 45202
Local Rule 1007(d) Parties in Interest List (Equity Security Holders / Top 20)
United States Treasury, Internal Revenue Service, Cincinnati, OH 45999-0039
U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001
Office of the Attorney General, State of Florida, the Capitol PL-01, Tallahassee, FL 32399-1050
All Points (Capital One Equipment Leasing), 275 Broadhollow Road, Melville, NY 11747
Ally, PO Box 9001948, Louisville, KY 40290-1948
Alter Moneta Corporation, 50 Lakefront Blvd., Ste 208, Buffalo, NY 14202
BB&T of Florida Business Loan Center, PO Box 580050, Charlotte, NC 28258-0050
BMW Bank of North America, PO Box 78066, Phoenix, AZ 85062-8066
Branch Banking and Trust Company, 8840 Tamiami Trail North, Naples, FL 34108
CitiCapital Commercial Corporation, 3950 Regent Blvd., Irving, TX 75063
Fifth Third Bank, 1000 Town Center #1400, Southfield, MI 48075
Fifth Third Bank, 999 Vanderbilt Beach Road 1MOC2A, Naples, FL 34108
Fifth Third Bank, PO Box 630778, Cincinnati, OH 45263-0778\
Ford Motor Credit, PO Box 790119, St. Louis, MO 63179-0119
General Electric Capital Corporation, PO Box 140849, Irving, TX 75014
GE Transportation Finance, PO Box 822108, Philadelphia, PA 19182-2108
Land Rover Capital Group, PO Box 78069, Phoenix, AZ 85062-8069
Long Time Insurance Co. Ltd., 3170 Horseshoe Dr. S., Naples, FL 34104
Mercedes Benz Financial, 6716 Grade lane, Bldg. 9, Suite 910, Louisville, KY 40213
Northern Trust Bank, NA 700 Brickell Avenue, Miami, FL 33131
Northern Trust, NA, 375 Fifth Avenue South, Naples, FL 34102
OFC Capital Corp./Wachovia, 576 Colonial Park Dr., Suite 100, Rosewell, GA 30075
Patriot Capital Corp., PO Box 790448, St. Louis, MO 63179-0448
Seneca Tank, Inc., 5585 N.E. 16th Street, Des Moines, IA 50313
US Bancorp, PO Box 580337, Minneapolis, MN 55458-0337
Wells Fargo Dealer Services, PO Box 25341, Santa Ana, CA 92799-5341

# EXHIBIT A

**(Budget)**

Evans Oil Company, LLC and Affiliates
Cash Projection

| | Selling Price | Profit per gallon | 8/12/2011 | 8/19/2011 | 8/26/2011 | 9/2/2011 | 9/9/2011 | 9/16/2011 | 9/23/2011 | 9/30/2011 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Week Ending | | | | | |
| **Actual Gallons-2010** | $2.48 | $0.187 | 812,223 | 812,223 | 812,223 | 968,807 | 968,807 | 968,807 | 968,807 | 968,807 | 7,280,703 |
| **Forecasted Gallons-2011** | | $0.180 | 795,978 | 795,978 | 795,978 | 949,431 | 949,431 | 949,431 | 949,431 | 949,431 | 7,135,088 |
| **Gallons-Change** | | | -2.0% | -2.0% | -2.0% | -2.0% | -2.0% | -2.0% | -2.0% | -2.0% | -2.0% |
| **Sales Price Per Gallon** | $2.88 | Forecaste Actual | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 | $ 3.46 |
| **Sales** | | | 2,754,084 | 2,754,084 | 2,754,084 | 3,285,031 | 3,285,031 | 3,285,031 | 3,285,031 | 3,285,031 | 24,687,406 |
| **Taxes invoiced to customers** | | | | | | | | | | | |
| Fuel and Excise Taxes | $ 0.19 | | 153,184 | 153,184 | 153,184 | 182,716 | 182,716 | 182,716 | 182,716 | 182,716 | 1,373,132 |
| Federal Fuel Taxes | $ 0.27 | | 143,276 | 143,276 | 143,276 | 170,898 | 170,898 | 170,898 | 170,898 | 170,898 | 1,284,316 |
| Total | 3.86 | | 296,460 | 296,460 | 296,460 | 353,613 | 353,613 | 353,613 | 353,613 | 353,613 | 2,657,448 |
| **Cash Receipts** | | | | | | | | | | | |
| Accounts receivable | 99.5% | | 2,264,939 | 2,375,749 | 2,375,749 | 2,520,582 | 2,408,354 | 2,908,311 | 2,429,358 | 2,792,276 | 20,075,316 |
| Sales tax charged to customers | | | 8,077 | 8,077 | 8,077 | 8,077 | 8,077 | 8,077 | 8,077 | 8,077 | 64,615 |
| Fuel and Excise Taxes | | | 161,174 | 161,174 | 161,174 | 161,000 | 153,184 | 153,184 | 153,184 | 182,716 | 1,286,791 |
| Federal Fuel tax | | | 150,749 | 150,749 | 150,749 | 150,586 | 143,276 | 143,276 | 143,276 | 170,898 | 1,203,559 |
| Chevron Netting Adjustment | 15% | | 420,386 | 413,113 | 413,113 | 413,113 | 492,755 | 492,755 | 492,755 | 492,755 | 3,630,745 |
| | | | 3,005,325 | 3,108,862 | 3,108,862 | 3,253,358 | 3,205,646 | 3,705,603 | 3,226,650 | 3,646,721 | 26,261,026 |
| **Disbursements** | | | | | | | | | | | |
| Product purchases | | | 2,651,988 | 2,610,808 | 2,610,808 | 2,610,808 | 3,114,133 | 3,114,133 | 3,114,133 | 3,114,133 | 22,940,945 |
| Chevron Netting - Not a cash disbursement | | | (420,386) | (413,113) | (413,113) | (413,113) | (492,755) | (492,755) | (492,755) | (492,755) | (3,630,745) |
| Fuel expense | | 0.013 | 10,348 | 10,348 | 10,348 | 12,343 | 12,343 | 12,343 | 12,343 | 12,343 | 92,756 |
| Federal Fuel tax | | | 150,586 | 143,276 | 143,276 | 143,276 | 170,898 | 170,898 | 170,898 | 170,898 | 1,264,004 |
| Sales tax charged to customers | | | - | 40,385 | - | - | - | - | 40,385 | - | 80,769 |
| Fuel and Excise taxes | | | - | 644,696 | - | - | - | - | 642,269 | - | 1,286,965 |
| Subtotal Product Purchases, Fuel Exp and Fed'l Fuel Tax | | | 2,392,535 | 3,036,400 | 2,351,319 | 2,353,314 | 2,804,618 | 2,804,618 | 3,487,272 | 2,804,618 | 22,034,695 |
| Payroll plus taxes | | | 122,504 | - | 122,504 | - | 122,504 | - | 122,504 | - | 490,016 |
| Health Insurance and Benefits | | | - | - | - | 25,000 | - | - | - | 25,000 | 50,000 |
| Bank charges | | | - | - | 5,500 | - | - | - | 5,500 | - | 11,000 |
| Credit card fees | | | - | - | - | - | - | - | - | - | - |
| Employee expenses | | | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 5,600 |
| Dues & Subscriptions | | | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 2,280 |
| Fleet washing | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 2,000 |
| Workers comp insurance | | | 9,363 | - | - | - | - | 9,363 | - | - | 18,726 |
| Insurance | | | - | 13,300 | - | 26,957 | - | - | - | 26,957 | 67,214 |
| Life Insurance | | | - | - | - | - | - | - | - | - | - |
| Leased equipment | | | 55,646 | - | - | 55,646 | 55,646 | - | - | 55,646 | 222,584 |
| Licenses and fees | | | 346 | 346 | 346 | 346 | 346 | 346 | 346 | 346 | 2,768 |
| Postage | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 2,000 |
| Shop supplies | | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 4,800 |
| Repairs & Maintenance | | | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 5,769 | 46,154 |
| Office supplies | | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 4,800 |
| Telephone & Utilities | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 24,000 |
| Uniforms | | | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 3,000 |
| Tolls | | | - | - | - | 7,000 | - | - | - | 7,000 | 14,000 |
| Miscellaneous | | | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 4,615 | 36,923 |
| Management fee | | | - | - | - | 20,000 | - | - | - | 20,000 | 40,000 |
| Fifth Third Adequate Protection Payment | | | - | - | - | 40,000 | - | - | - | 40,000 | 80,000 |
| Professional fees-Debtor | | | - | - | 125,000 | - | - | - | - | 127,000 | 252,000 |
| Garden City Group | | | - | - | 20,000 | - | - | - | - | 20,000 | 40,000 |
| US Trustee fees | | | - | - | - | - | - | - | - | - | - |
| Investment banker | | | - | - | 20,000 | - | - | - | - | 20,000 | 40,000 |
| DIP Monitoring Expenses | | | 4,000 | - | 4,000 | - | 4,000 | - | 4,000 | - | 16,000 |
| Ordinary Course Professional Fees | | | 5,000 | 5,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 |
| **Total Disbursements** | | | 2,605,839 | 3,071,490 | 2,670,113 | 2,574,707 | 3,008,559 | 2,835,772 | 3,641,066 | 3,168,012 | 23,575,559 |
| **Net cash** | | | 399,486 | 37,371 | 438,748 | 678,650 | 197,087 | 869,831 | (414,416) | 478,709 | 2,685,467 |

| | At Filing | 8/12/2011 | 8/19/2011 | 8/26/2011 | 9/2/2011 | 9/9/2011 | 9/16/2011 | 9/23/2011 | 9/30/2011 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Balance** | | | | | | | | | | |
| Opening balance | 538,300 | 1,026,248 | 1,005,348 | 629,606 | 655,242 | 920,779 | 625,111 | 1,002,187 | 95,016 | 1,026,248 |
| Less: Chevron Netting Adjustment | | (420,386) | (413,113) | (413,113) | (413,113) | (492,755) | (492,755) | (492,755) | (492,755) | (3,630,745) |
| Net cash | | 399,486 | 37,371 | 438,748 | 678,650 | 197,087 | 869,831 | (414,416) | 478,709 | 2,685,467 |
| **Cash closing balance** | | 1,005,348 | 629,606 | 655,242 | 920,779 | 625,111 | 1,002,187 | 95,016 | 80,970 | 80,970 |
| | | | | | | | | | | |
| **Accounts Receivable** | | | | | | | | | | |
| Opening balance | 9,754,461 | 9,270,760 | 9,324,056 | 9,273,816 | 9,223,575 | 9,616,939 | 10,058,014 | 9,999,132 | 10,419,203 | 10,930,000 |
| Sales | | 2,754,084 | 2,754,084 | 2,754,084 | 3,285,031 | 3,285,031 | 3,285,031 | 3,285,031 | 3,285,031 | 47,167,259 |
| Taxes | | 304,537 | 304,537 | 304,537 | 361,690 | 361,690 | 361,690 | 361,690 | 361,690 | 5,317,124 |
| Less: Receipts-Sales | | (2,264,939) | (2,375,749) | (2,375,749) | (2,520,582) | (2,408,354) | (2,908,311) | (2,429,358) | (2,792,276) | (40,802,745) |
| Less: Receipts-Taxes | | (320,000) | (320,000) | (320,000) | (319,663) | (304,537) | (304,537) | (304,537) | (361,690) | (5,761,134) |
| Less: Non Cash Credits and Adjustments | | - | - | - | - | - | - | - | - | - |
| Less: Chevron Netting Adjustment | | (420,386) | (413,113) | (413,113) | (413,113) | (492,755) | (492,755) | (492,755) | (492,755) | (7,130,029) |
| Closing balance | | 9,324,056 | 9,273,816 | 9,223,575 | 9,616,939 | 10,058,014 | 9,999,132 | 10,419,203 | 10,419,203 | 9,720,475 |
| | | | | | | | | | | |
| Inventory | 1,922,124 | 2,245,000 | 2,245,000 | 2,245,000 | 2,245,000 | 2,245,000 | 2,245,000 | 2,245,000 | 2,245,000 | 2,383,128 |
| | | | | | | | | | | |
| **Cash Collateral** | 12,214,885 | 12,574,404 | 12,148,422 | 12,123,817 | 12,782,718 | 12,928,125 | 13,246,319 | 12,759,219 | 12,745,173 | |
| **Change in Cash Collateral** | | 359,519 | (66,463) | (91,068) | 567,833 | 713,240 | 1,031,434 | 544,334 | 530,288 | |
| **Adequate Protection Payment - Escrowed** | | | | | | | | | | |
| Net Change in Cash Collateral | | 359,519 | (66,463) | (91,068) | 567,833 | 713,240 | 1,031,434 | 544,334 | 530,288 | |
| | | | | | | | | | | |
| DIP Loan Drawdowns | | - | - | - | - | - | - | - | - | |
| DIP Loan Balance | | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| Cumulative Fifth Third Adequate Protection escrow | | - | 66,463 | 91,068 | - | - | - | - | - | |
| **DIP Loan available cash** | | 1,000,000 | 933,537 | 908,932 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |

**Assumptions:**
Revenues projected by management estimate and compared to same period in 2010 for reasonableness.
Gross Profit and Cost of Product determined by using a fixed cents per gallon profit for gallons sold--based on recent actual performance
Accounts Receivable collections projected off historical DSO and adjusted for current circumstances
Accounts Payable payments projected to paid one week after product sold
Federal tax payments (made to vendors) projected to be paid one week after purchase of product. Other taxes paid on 19th of each month
Per court order authorizing monthly payments to professionals at 80% of fees and 100% of expenses, budget includes the 80% of projected fees plus 100% of expenses
Several operating expenses are assumed to be paid weekly--but might actually be paid once or twice a month
Inventory includes prepayments to TransMontaigne and World Fuel

# EXHIBIT B

### (Financial Reporting)

Weekly (Each Wednesday for the period ended prior Friday):

- Working Capital variance from Petition Date

- List of every receipt, and the amount of total receipts

- List of every disbursement, and the amount of total disbursements

- List of every disbursement (if any) not reviewed or approved by The Parkland Group, Inc.

- Working Capital variance from Petition Date

Daily (Each business day for the prior business day):

- For each bank account, the aggregate amounts deposited and disbursed each day;

- For each bank account, a list of every disbursement, and amount of total disbursements